IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DNA GENOTEK INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ANCESTRY.COM DNA, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff DNA Genotek Inc. ("DNA Genotek"), by its attorneys, for its Complaint, alleges as follows:

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, involving United States Patent No. 8,221,381 B2 ("the '381 patent") (attached as Exhibit A hereto), an action for breach of contract, conversion and trespass to chattel, and an action to quiet title.

## PARTIES

2.      Plaintiff DNA Genotek is a Canadian corporation with its principal place of business in Kanata, Ontario.  DNA Genotek is a wholly-owned subsidiary of OraSure Technologies, Inc., a Delaware corporation with its principal place of business in Bethlehem, Pennsylvania.

3.      Upon information and belief, Defendant Ancestry.com DNA, LLC ("Ancestry") is a Delaware limited liability company with its principal place of business in Provo, Utah.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the

United States, Title 35, Section 1, et seq. of the United States Code.  This Court has subject

matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  The claims for breach of contract,

conversion and trespass to chattel, and the action to quiet title, arise under the laws of Ontario,

Canada, and/or the common laws of Delaware or other states.  The Court has subject matter

jurisdiction over these claims under the provisions of 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over Ancestry because Ancestry is a

Delaware limited liability company, Ancestry has transacted business in this District and it has

otherwise purposely availed itself of the privileges and benefits of the laws of the State of

Delaware by virtue of organizing in Delaware.  Ancestry and its related companies specifically

target customers with ties to Delaware through their "Delaware family history research page" on

the Ancestry.com website, which touts access to Delaware census and voter lists; Delaware birth,

marriage, and death certificates; Delaware naturalization records; and other Delaware records.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## FACTUAL BACKGROUND

7.      DNA Genotek is a leading provider of products for biological sample collection,

including oral fluid sample collection and stabilization solutions for molecular applications.

DNA Genotek has revolutionized the nucleic acid (DNA and RNA) collection market with

products that provide substantial advantages over traditional methods of biological sample

collection.  DNA Genotek's products incorporate proprietary technology that is protected by a

robust patent estate.

8.      DNA Genotek developed and patented its proprietary saliva DNA collection kits

("DNA Genotek Saliva Collection Products").  DNA Genotek sells the DNA Genotek Saliva

Collection Products to customers and distributors worldwide.

**DNA Genotek and Ancestry Entered Into Sales Agreements for
the DNA Genotek Saliva Collection Products**

9.      Before January 2012, Ancestry and DNA Genotek discussed a business

relationship whereby DNA Genotek would provide the DNA Genotek Saliva Collection Products

to Ancestry.

10.      In January 2012, DNA Genotek and Ancestry entered into a Mutual Non-

Disclosure Agreement (the "NDA").

11.      The NDA provides that Confidential Information includes any information

provided by the discloser, whether operational, financial, product or service or customer

information or otherwise, whether disclosed to recipient in oral, written or electronic form, which

would be considered confidential by a reasonable person under the circumstances or is labeled as

confidential.

12.      The NDA further provides that the recipient of Confidential Information shall not

use any of the Confidential Information for the recipient's own benefit or for the benefit of any

third party, or any other purpose than that for which it was disclosed.

13.      On or around February 7, 2012, DNA Genotek proposed the first sale of 50,000

units of the DNA Genotek Saliva Collection Products to Ancestry with a sales quote and a terms

and conditions document ("Terms and Conditions") attached.

14.      Ancestry responded by issuing a purchase order for the same number of units.

The purchase order included the amount of product to be shipped and the purchase price.  It did

not include a separate set of terms and conditions.  On or around February 15, 2012, Kenneth

Chahine, on behalf of Ancestry, signed DNA Genotek's original sales quote, acknowledging that

Ancestry agreed to the price and corresponding Terms and Conditions.

15.      For approximately two years in 2012 and 2013, DNA Genotek and Ancestry

entered into multiple similar sales agreements for the sale of more than 300,000 units of the DNA Genotek Saliva Collection Products to Ancestry.

16.     During these two years, Ancestry received the Terms and Conditions with the sales quotes multiple times.  Ancestry repeatedly agreed to the Terms and Conditions multiple times over the two years when it accepted and signed DNA Genotek's sales quotes with the Terms and Conditions attached.

17.     For example, Ancestry's representative signed a sales quote attaching a copy of the Terms and Conditions on June 3, 2013.

18.     Ancestry's purchases of the DNA Genotek Saliva Collection Products were governed by these sales quotes and the attached Terms and Conditions.

19.     Section 7 of the Terms and Conditions, among other things, prohibits Ancestry from reverse engineering the chemical solution contained in the DNA Genotek Saliva Collection Products.

20.     Under Section 10 of the Terms and Conditions, DNA Genotek is the rightful owner of any new use, enhancement, or improvement of its products by Ancestry.  To the extent that Ancestry developed a new use, improvement, or enhancement of the DNA Genotek Saliva Collection Products, whether separately patentable or not, Ancestry was required to disclose it immediately to DNA Genotek.

21.     Ancestry continued to purchase the DNA Genotek Saliva Collection Products through at least the end of 2013.

**Ancestry Breached the Terms and Conditions**

22.     Ancestry is the assignee of PCT Patent Application No. WO 2015/017701 A1, entitled "Sample Collection Device" ("the '701 Application").  A true and correct copy of the '701 Application is attached hereto as Exhibit B.  Ancestry employees, including Kenneth G.

4

Chahine, Benjamin J. Oyler, and Catherine Ann Ball, are named inventors of the '701 Application.

23.     The '701 Application specifically mentions four DNA Genotek patent applications and one issued DNA Genotek United States Patent in the Background of the Invention section.

24.     The '701 Application claims priority to U.S. Provisional Application No. 61/861,329, filed on August 1, 2013 ("the '329 Application").

25.     At the time of filing of the '329 Application on August 1, 2013, Ancestry was buying and using the DNA Genotek Saliva Collection Products from DNA Genotek.

26.     At the time of filing of the '329 Application on August 1, 2013, the Terms and Conditions governed the purchase and use of the DNA Genotek Saliva Collection Products.

27.     By filing the '701 Application, Ancestry has represented, at least to the International Bureau of the World Intellectual Property Organization, or the PCT receiving office, i.e., the United States Patent & Trademark Office, that it has invented an improved sample collection device.

28.     To the extent that Ancestry described an invention in its patent applications, or to the extent that Ancestry developed an enhanced or improved version of any DNA Genotek Saliva Collection Product, DNA Genotek is the rightful owner of that invention or product pursuant to Section 10 of the Terms and Conditions.

29.     Ancestry failed to disclose the '329 Application or the '701 Application to DNA Genotek.

30.     DNA Genotek did not consent to the filing of either the '329 Application or the '701 Application.

31.     Ancestry failed to disclose timely the sample collection device described in the

'329 Application or the '701 Application to DNA Genotek.

32.     Ancestry failed to disclose timely any of its products that would be covered by the

'329 Application or the '701 Application to DNA Genotek.

33.     Ancestry failed to assign the rights to the '329 Application or the '701

Application to DNA Genotek.

**Ancestry Breached the Terms and Conditions by Developing and Selling Its Own Product
Based On the DNA Genotek Saliva Collection Products**

34.     Upon information and belief, Ancestry employees and/or consultants hired by

Ancestry developed a sample collection device ("the Ancestry Product") that they later described

in the '329 Application or the '701 Application.

35.     DNA Genotek did not consent to Ancestry developing the Ancestry Product.

36.     Upon information and belief, Ancestry reverse engineered the chemical solution

contained in the DNA Genotek Saliva Collection Products to develop the Ancestry Product.

37.     Ancestry failed to disclose timely the Ancestry Product to DNA Genotek.  In

January 2014, without disclosing the '329 Application or the '701 Application, at least one

Ancestry employee explained that the Ancestry Product was an improvement of the DNA

Genotek Saliva Collection Products.

38.     Upon information and belief, Ancestry has and continues to make, use, sell, and

offer to sell the Ancestry Product and/or services that incorporate the use of the Ancestry

Product.

**The '381 Patent**

39.     DNA Genotek is the owner by assignment of all right, title, and interest in and to

United States Patent No. 8,221,381 B2 ("the '381 Patent"), entitled "Container System for

Releasably Storing a Substance," which duly and legally issued to DNA Genotek, as assignee of Rod Muir, Derek Kirkland, Ian Curry, Roy Sunstrum, Paul Lem, and H. Chaim Birnboim, on July 17, 2012.

40.     Ancestry has been and is now infringing on one or more claims of the '381 Patent.

41.     Ancestry infringes the '381 Patent at least by making, using, offering for sale, selling, marketing, distributing, and/or importing the Ancestry Product.

42.     Ancestry is infringing the '381 Patent, either literally or by the doctrine of equivalents.

43.     Ancestry was aware of the '381 Patent when engaging in these knowing and purposeful activities and was aware that the making, using, selling, or offering for sale of the Ancestry Product or services incorporating the Ancestry Product constituted an act of infringement of the '381 Patent.

## COUNT I – INFRINGEMENT OF THE '381 PATENT

44.     DNA Genotek restates and incorporates by reference paragraphs 1-43, as if fully set forth herein.

45.     Ancestry has been and is now infringing one or more claims of the '381 patent, either literally or by the doctrine of equivalents.

46.     Ancestry's infringing activities include making, using, offering for sale, selling, marketing, distributing, and/or importing products that infringe one or more claims of the '381 Patent.

47.     Ancestry infringes the '381 Patent at least by making, using, offering for sale, selling, marketing, distributing, and/or importing the Ancestry Product or services incorporating the Ancestry Product.

48.     Ancestry's infringing activities violate 35 U.S.C. § 271.

49.     As a result of Ancestry's infringement of the '381 Patent, DNA Genotek has been and will be damaged, and DNA Genotek is entitled to be compensated for such damages pursuant to 35 U.S.C. § 284 in an amount to be determined at trial, but in no event less than a reasonable royalty.

50.     Upon information and belief, Ancestry's infringement of the '381 Patent has been and continues to be willful and deliberate.

51.     DNA Genotek has complied with any statutory requirement for placing a notice of its patents on its products, including but not limited to its Oragene●DNA®, Oragene●DISCOVER®, and Oragene●Dx® branded saliva collection kits.

52.     Upon information and belief, Ancestry's infringement of the '381 Patent will continue unless enjoined by this Court.  As a result of Ancestry's infringement, DNA Genotek has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, DNA Genotek is entitled to injunctive relief against such infringement.

53.     As a result of Ancestry's infringement, DNA Genotek has suffered and will continue to suffer significant damages.

## COUNT II – BREACH OF CONTRACT

54.     DNA Genotek restates and incorporates by reference paragraphs 1-53, as if fully set forth herein.

55.     The Terms and Conditions constitute a valid and binding contract between DNA Genotek and Ancestry.

56.     Ancestry's purchases of the DNA Genotek Saliva Collection Products were governed by the Terms and Conditions between at least February 15, 2012 and October 2013.

57.     DNA Genotek fully complied with all of its obligations under the Terms and Conditions at all times.

58.     Ancestry breached the Terms and Conditions at least by filing the '329 Application and the '701 Application in its own name, failing to disclose the '329 Application or the '701 Application to DNA Genotek, failing to disclose timely the Ancestry Product and any other Ancestry products covered by the '329 Application or the '701 Application to DNA Genotek, and failing to assign the rights to the '329 Application and the '701 Application to DNA Genotek.

59.     Ancestry breached the Terms and Conditions by making, using, selling, or offering to sell the Ancestry Product without the permission of or payment to DNA Genotek.

60.     Upon information and belief, Ancestry breached Section 7 of the Terms and Conditions by reverse engineering the chemical solution contained in the DNA Genotek Saliva Collection Products to develop the Ancestry Product.

61.     Ancestry's breaches of the Terms and Conditions were material.

62.     Upon information and belief, Ancestry's breaches of the Terms and Conditions were done willfully and deliberately.

63.     As a direct and proximate result of Ancestry's breaches, DNA Genotek has suffered and will continue to suffer significant damages.

## COUNT III - CONVERSION

64.     DNA Genotek restates and incorporates by reference paragraphs 1-63, as if fully set forth herein.

65.     DNA Genotek has the right to possess the intellectual property rights described in the '329 Application and the '701 Application pursuant to Section 10 of the Terms and Conditions.

66.     By filing the '701 Application, Ancestry has represented, at least to the International Bureau of the World Intellectual Property Organization, that it has invented an

improved sample collection device.  To the extent that Ancestry has an invention, or to the extent

that Ancestry developed an enhanced or improved version of any DNA Genotek Saliva

Collection Product, DNA Genotek is the rightful owner of that invention, or enhanced or

improved product.

67.     Ancestry has willfully and substantially interfered with the intellectual property

rights afforded to DNA Genotek in the Terms and Conditions by filing the '329 Application and

the '701 Application in its own name, failing to disclose the '329 Application or the '701

Application to DNA Genotek, failing to disclose the Ancestry Product and any other Ancestry

products covered by the '329 Application or the '701 Application to DNA Genotek, and failing

to assign the rights to the '329 Application and the '701 Application to DNA Genotek.

68.     Ancestry had no lawful justification for interfering with the intellectual property

rights afforded to DNA Genotek in the Terms and Conditions.

69.     DNA Genotek did not consent to Ancestry's conduct.

70.     Ancestry's conduct has deprived DNA Genotek of the ability to exercise its rights

to the '329 Application and the '701 Application, to any invention or enhanced or improved

version of any DNA Genotek Saliva Collection Products or to any other products covered by the

'329 Application or the '701 Application.

71.     As a direct and proximate result of Ancestry's conduct, DNA Genotek has

suffered and will continue to suffer significant damages.

**COUNT IV- TRESPASS TO CHATTEL**

72.     DNA Genotek restates and incorporates by reference paragraphs 1-71, as if fully

set forth herein.

73.     DNA Genotek has the right to possess the intellectual property rights in the '329

Application and the '701 Application pursuant to Section 10 of the Terms and Conditions.

74.     By filing the '701 Application, Ancestry has represented, at least to the International Bureau of the World Intellectual Property Organization, that it has invented an improved sample collection device.  To the extent that Ancestry has an invention, or to the extent that Ancestry developed an enhanced or improved version of any DNA Genotek Saliva Collection Product, DNA Genotek is the rightful owner of that invention, or enhanced or improved product.

75.     Ancestry has willfully and substantially interfered with the intellectual property rights afforded to DNA Genotek in the Terms and Conditions by filing the '329 Application and the '701 Application in its own name, failing to disclose the '329 Application or the '701 Application to DNA Genotek, failing to disclose the Ancestry Product and any other Ancestry products covered by the '329 Application or the '701 Application to DNA Genotek, and failing to assign the rights to the '329 Application and the '701 Application to DNA Genotek.

76.     Ancestry had no lawful justification for interfering with the intellectual property rights afforded to DNA Genotek in the Terms and Conditions.

77.     DNA Genotek did not consent to Ancestry's conduct.

78.     Ancestry's conduct has deprived DNA Genotek of the ability to exercise its rights to the '329 Application and the '701 Application, to any invention or enhanced or improved version of any DNA Genotek Saliva Collection Products or to any other products covered by the '329 Application or the '701 Application.

79.     As a direct and proximate result of Ancestry's conduct, DNA Genotek has suffered and will continue to suffer significant damages.

## COUNT V- ACTION TO QUIET TITLE

80.     DNA Genotek has the right to possess the intellectual property rights in the '329 Application and the '701 Application pursuant to Section 10 of the Terms and Conditions.

81.     Ancestry has made an adverse claim to DNA Genotek's rights in the '329 Application and the '701 Application by filing the '329 Application and the '701 Application in its own name, failing to disclose the '329 Application or the '701 Application to DNA Genotek, failing to disclose the Ancestry Product and any other Ancestry products covered by the '329 Application or the '701 Application to DNA Genotek, and failing to assign the rights to the '329 Application and the '701 Application to DNA Genotek.

82.     DNA Genotek seeks to quiet title to its property rights in the '329 Application and the '701 Application.

## PRAYER FOR RELIEF

WHEREFORE, DNA Genotek respectfully requests the following relief:

(a)     Entry of judgment that Ancestry has infringed the '381 patent;

(b)     Preliminary and permanent injunctive relief enjoining Ancestry, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with it, from directly or indirectly infringing the '381 patent;

(c)     An award of damages adequate to compensate DNA Genotek for Ancestry's infringement of the '381 patent;

(d)     An award of increased damages, under 35 U.S.C. § 284, in an amount three times the actual damages awarded to DNA Genotek, by reason of Ancestry's willful infringement of the '381 patent;

(e)     A declaration that this case is exceptional under 35 U.S.C. § 285;

(f)     A judgment that Ancestry has breached its obligations under the Terms and Conditions;

(g)     Preliminary and permanent injunctive relief enjoining Ancestry from making, using, selling, or offering to sell, directly or as part of a service, sample collection devices that

are described in the '329 Application or the '701 Application, derived from the DNA Genotek Saliva Collection Products, or designed, in whole or in part, after reverse engineering the chemical solution contained in the DNA Genotek Saliva Collection Products;

(h)     Preliminary and permanent injunctive relief enjoining Ancestry from taking any action or engaging in any inaction that would affect the status quo of the '329 Application or the '701 Application and any related applications, related patents, or foreign counterparts, including with respect to ownership;

(i)     A judgment that DNA Genotek is the rightful owner of the '329 Application and the '701 Application and any related applications, related patents, or foreign counterparts;

(j)     An award of damages adequate to compensate DNA Genotek and/or restitution for Defendant's breach of contract;

(k)     An award of damages adequate to compensate DNA Genotek and/or restitution for Defendant's acts of conversion;

(l)     An award of damages adequate to compensate DNA Genotek and/or restitution for Defendant's acts of trespass to chattel;

(m)     An award of DNA Genotek's costs and attorneys' fees incurred in connection with this action, under 35 U.S.C. § 285 and other applicable authority;

(n)     An award of pre-judgment interest; and

(o)     Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

DNA Genotek hereby demands trial by jury on all issues so triable.


OF COUNSEL:                          */s/ Karen E. Keller*
David C. Doyle                       John W. Shaw (No. 3362)
Brian M. Kramer                      Karen E. Keller (No. 4489)
MORRISON FOERSTER LLP                300 Delaware Avenue, Suite 1120
12531 High Bluff Drive               SHAW KELLER LLP
Suite 100                            Wilmington, DE 19801
San Diego, CA 92130                  (302) 298-0700
(858) 314-5415                       kkeller@shawkeller.com

Dated: May 4, 2015                   *Attorneys for Plaintiff*