## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DNA GENOTEK INC.,                        )
                                         )
                    Plaintiff,           )     C.A. No. 15-355-SLR
                                         )
            v.                           )     **JURY TRIAL DEMANDED**
                                         )
ANCESTRY.COM DNA, LLC,                   )     **PUBLIC VERSION**
                                         )
                    Defendant.           )


## ANCESTRY.COM DNA'S REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS GENOTEK'S WILLFUL INFRINGEMENT,
## CONVERSION, TRESPASS TO CHATTEL, AND ACTION TO QUIET TITLE CLAIMS

OF COUNSEL:

Michael Sacksteder
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300

Melanie L. Mayer
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Tel: (206) 389-4510

Dated: September 18, 2015
PUBLIC VERSION
Dated: September 25, 2015
1204893 / 42476

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Ancestry.com DNA,
LLC*

# TABLE OF CONTENTS

**Page**

I.     GENOTEK FAILED TO STATE A CLAIM FOR WILLFUL INFRINGEMENT ........... 1

    A.     The International Search Report for AncestryDNA's '701 Application
        Cannot Support an Allegation of Willful Infringement .......................................... 1

    B.     Neither AncestryDNA's '329 Application Nor Mr. Chahine's Alleged
        Approval of Genotek's Product Labels Can Support an Allegation of
        Willful Infringement ............................................................................................. 3

II.    GENOTEK'S CONVERSION AND TRESPASS TO CHATTEL CLAIMS ARE
    BARRED UNDER THE ECONOMIC LOSS RULE ........................................................ 4

    A.     Because No Independent Duty Prevents AncestryDNA From Filing Patent
        Applications, the Economic Loss Rule Bars Genotek's Tort Claims ..................... 5

    B.     Genotek's Patent Portfolio is Not "Other Property," and the "Damage to
        Other Property" Exception Does Not Apply .......................................................... 6

    C.     Genotek's Trespass to Chattel Claim Fails Because Genotek Fails to
        Allege that It Possessed the Chattel or that the Chattel Was Harmed ................... 7

III.   GENOTEK FAILED TO STATE AN ACTION TO QUIET TITLE ................................. 8

    A.     Utah Law Requires Genotek to Allege an Existing Interest or Ownership
        to Assert an Action to Quiet Title .......................................................................... 8

    B.     Genotek Fails to State an Action to Quiet Title Claim Under This Court's
        Inherent Equitable Power ..................................................................................... 10

    C.     A Quiet Title Claim is Not a Proper Remedy for Genotek's Claims .................... 10

IV.    CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

CASES

**Page(s)**

*1st National Credit Corp. v. Von Hake,*
  511 F. Supp. 634 (D. Utah 1981) ........................................................................... 10

*Advanced Recovery Sys. LLC v. Am. Agencies LLC,*
  No. 2:13-cv-00283-DAK, 2013 U.S. Dist. LEXIS 160623 (D. Utah Nov. 7,
  2013) .......................................................................................................................... 5

*Callwave Commc'ns LLC v. AT & T Mobility LLC,*
  C.A. No. 12-1701-RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) ...................... 2

*Chalumeau Power Sys. LLC v. Alcatel-Lucent,*
  C.A. No. 11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) ...................... 2

*Collard v. Nagel Constr., Inc.,*
  57 P.3d 603 (Utah Ct. App. 2002) ...................................................................... 9, 10

*Gillespie v. Hocker,*
  C.A. No. 15-51-SLR, 2015 WL 4468922 (D. Del. July 22, 2015) ...................... 2, 7

*Holladay Towne Ctr., L.L.C. v. Brown Family Holdings, L.L.C.,*
  248 P.3d 452 (Utah 2011) ....................................................................................... 9

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH,*
  408 F.3d 1374 (Fed. Cir. 2005) ............................................................................... 4

*In re Seagate Tech. LLC,*
  497 F.3d 1360 (Fed. Cir. 2007) ............................................................................... 1

*Nolan v. Hoopiiana,*
  144 P.3d 1129 (Utah 2006) ................................................................................... 8-9

*Powder Run at Deer Valley Owner Ass'n v. Black Diamond Lodge at Deer Valley
  Ass'n of Unit Owners,*
  320 P.3d 1076 (Utah Ct. App. 2014) ...................................................................... 9

*Reighard v. Yates,*
  285 P.3d 1168 (Utah 2012) .................................................................................. 5, 6

*Salt Lake City Corp. v. ERM-West, Inc.,*
  984 F. Supp. 2d 1156 (D. Utah 2013) ..................................................................... 5

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*,
    28 P.3d 669 (Utah 2001) .......................................................................................7

*St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*,
    C.A. No. 10-425-LPS, 2012 WL 1134318 (D. Del. Mar. 28, 2012) ...................................1, 2

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985) ................................................................................3

*Walker v. Union Pacific R.R. Co.*,
    844 P.2d 335 (Utah Ct. App. 1992) ...........................................................................8

STATUTES

Quieting Titles Act ...............................................................................................................8

OTHER AUTHORITIES

Restatement (Second) of Torts
    § 217 (1965) ........................................................................................................7

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1, 10

I.     **GENOTEK FAILED TO STATE A CLAIM FOR WILLFUL INFRINGEMENT**

To prove a claim of willful infringement, a plaintiff must show (1) "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and (2) that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). At the pleading stage, the complaint must allege "factual circumstances in which the patents-in-suit [are] called to the attention" of the defendant, as well as facts giving rise to "at least a showing of objective recklessness of the infringement risk." *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, C.A. No. 10-425-LPS, 2012 WL 1134318, at *2-3 (D. Del. Mar. 28, 2012) (internal quotation marks and citations omitted).

Genotek's opposition cites four events that allegedly show AncestryDNA willfully infringed U.S. 8,221,381 ("the '381 patent"). The first is not even discussed in Genotek's First Amended Complaint ("FAC") and therefore cannot be considered in ruling on AncestryDNA's Rule 12(b)(6) motion. None shows that the '381 patent was called to AncestryDNA's attention or that AncestryDNA acted with objective recklessness as to any infringement risk.

A.     **The International Search Report for AncestryDNA's '701 Application Cannot Support an Allegation of Willful Infringement**

In its opposition, Genotek asserts that AncestryDNA was put on notice of the '381 patent when an International Search Report ("ISR") for AncestryDNA's PCT application ("the '701 Application") identified U.S. 2009/0216213, a published patent application that ultimately issued as the '381 patent. D.I. 14 at 10, 12. However, ***Genotek did not allege willful infringement based on the '701 Application ISR in its FAC***. In fact, the FAC does not discuss the ISR at all. The only allegations in the FAC relating to the '701 Application are directed to Genotek's other claims. *See* D.I. 7 at ¶¶ 68-69, 72, 76-77, 80, 84-85. Thus, Genotek's assertions related to the '701 Application ISR should not be considered in ruling on AncestryDNA's Fed. R. Civ. P.

12(b)(6) motion. *See Gillespie v. Hocker*, C.A. No. 15-51-SLR, 2015 WL 4468922, at *8, n. 13 (D. Del. July 22, 2015).

Moreover, the ISR's identification of U.S. 2009/0216213 does not call the '381 patent to AncestryDNA's attention. First, simply having a document cited during prosecution is not sufficient to show that a party had knowledge of that document. *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, C.A. No. 11-1175-RGA, 2012 WL 6968938, at *1-2 (D. Del. July 18, 2012) (willful infringement claim dismissed where patent examiner's citation of the patent-in-suit in three of defendants' patent applications does not make knowledge of the patent-in-suit plausible); *see also Callwave Commc'ns LLC v. AT & T Mobility LLC*, C.A. No. 12-1701-RGA, 2014 WL 5363741, at *2 (D. Del. Jan. 28, 2014) (defendant's multiple citations to patent-in-suit during prosecution of defendant's own patents is insufficient to support willful infringement allegation). In addition, the ISR cites U.S. 2009/0216213 as a relevant document, ***not the '381 patent***. And contrary to Genotek's assertion, the ISR does not "point out" that the '381 patent issued from U.S. 2009/0216213, but only identifies the '381 patent as one of 17 family members.

Genotek also mistakes the ISR for a "first office action." AncestryDNA was not required to respond to the ISR or review any document it cited. No prosecution of AncestryDNA's PCT application will occur until it enters the "national stage" in early 2016. *See* http://www.wipo.int/pct/en/faqs/faqs.html. Thus, Genotek's suggestion that AncestryDNA studied both the ISR and the documents it cites is simply not correct.

Even if the Court were to consider Genotek's arguments (not alleged in the FAC) and even if the Court were to find that the ISR called the '381 patent to AncestryDNA's attention (which it did not), Genotek has not pled any facts giving rise to "at least a showing of objective recklessness of the infringement risk." *St. Clair Intellectual Prop.*, 2012 WL 1134318, at *2-3

2

(citation and internal quotation marks omitted).

Genotek's opposition argues that "the Ancestry patent application is an embodiment of the Ancestry Product" and "the patent office said that the Ancestry patent application was obvious in light of the '381 patent, [so] it follows that the Ancestry Product might infringe the '381 patent." D.I. 14 at 12. Again, these allegations are *not in the FAC*. In addition, by identifying U.S. 2009/0216213 as an obviousness reference, the ISR necessarily concludes that this reference *does not* include all of the elements of AncestryDNA's invention. It would be illogical for AncestryDNA to conclude that it infringes a patent that does not even disclose all of the elements of its invention.

**B.      Neither AncestryDNA's '329 Application Nor Mr. Chahine's Alleged Approval of Genotek's Product Labels Can Support an Allegation of Willful Infringement**

Genotek's remaining three allegations do not relate to the '381 patent. First, Genotek alleges that, "[o]n August 1, 2013, Ancestry filed the '329 Application and referenced DNA Genotek's patents and patent applications as prior art." D.I. 7 at ¶ 47; D.I. 14 at 10. The '329 Application does not reference the '381 patent or any other patent or application in the '381 patent family, nor does it show that AncestryDNA had knowledge of the '381 patent.

Second, Genotek alleges that, on February 13, 2012, Ken Chahine of AncestryDNA signed a customer approval form with an image of the Genotek product label that identified the Genotek product as being covered by U.S. Patent No. 7,482,116 and other pending patents. D.I. 7 at ¶ 46; D.I. 14 at 8-9. The only patent identified on this label — U.S. Patent No. 7,482,116 — is *not the patent-in-suit* and is not even in the same patent family as the '381 patent. Likewise, "other pending patents" does not call the '381 patent to AncestryDNA's attention. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("A 'pending patent' notice gives one no knowledge [of the patent] whatsoever.") Tellingly,

3

Genotek admits that, as of February 13, 2012, "the '381 patent had not yet issued." D.I. 14 at 9. Therefore, AncestryDNA could not have had knowledge of the '381 patent at the time this first label was approved because this patent did not exist yet.

Finally, Genotek alleges that on September 20, 2012, Mr. Chahine approved an amended product label that included the words "Patent (www.dnagenotek.com/legalnotices)" and that, as of October 30, 2012, this web page indicated that Genotek's OG-510 product was protected by the '381 patent. D.I. 7 at ¶ 47; D.I. 14 at 9-10. As a matter of law, marking a product with a patent notice, or even a patent number, is not sufficient to support a finding of willful infringement. *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377-78 (Fed. Cir. 2005). Genotek attempts to distinguish *Imonex* by arguing that Mr. Chahine had a role in approving the label. D.I. 14 at 13. Even if Mr. Chahine did review the label, the patent notice on the label is insufficient notice under *Imonex*. And if it happened at all, Mr. Chahine's alleged review of the web page when approving the label (on Sept. 20) would have occurred even before the '381 patent is asserted to have been listed on the web page (on Oct. 30).

Moreover, the FAC does not allege any facts giving rise to "at least a showing of objective recklessness of the infringement risk" with respect to the '329 Application or Mr. Chahine's approval of the product labels. Genotek's opposition states that it is "more than plausible that Mr. Chahine or someone else at Ancestry viewed the contents of the link" and made "a connection between the '381 patent and Ancestry's products." D.I. 14 at 13. Yet again, these facts ***are not alleged*** in the FAC. In sum, the FAC failed to allege a willful infringement claim.

## II.    GENOTEK'S CONVERSION AND TRESPASS TO CHATTEL CLAIMS ARE BARRED UNDER THE ECONOMIC LOSS RULE

The Court should not permit Genotek to make an end-run around the parties' Agreement,

including the parties' bargained-for damages provision, by bringing tort claims covered by the Agreement. Genotek's conversion and trespass to chattel claims are barred by the economic loss rule, and the Court should dismiss both.

### A.    Because No Independent Duty Prevents AncestryDNA From Filing Patent Applications, the Economic Loss Rule Bars Genotek's Tort Claims

As AncestryDNA showed in its opening brief, the economic loss rule bars Genotek's tort claims because they are based on the exact same conduct as its contract claim. *Advanced Recovery Sys. LLC v. Am. Agencies LLC*, No. 2:13-cv-00283-DAK, 2013 U.S. Dist. LEXIS 160623, at *14-15 (D. Utah Nov. 7, 2013) (dismissing conversion claim under the economic loss rule where the conversion claim was based on the same conduct as the breach of contract claim). Genotek's opposition asserts that its tort and contract claims are not based on the "exact same conduct." D.I. 14 at 13-14. But even if the Court accepts that Genotek's contract and tort claims are founded on separate allegations, the economic loss rule is not applied so narrowly, and Genotek's tort claims should be dismissed because they do not arise under a duty independent of the parties' Agreement.

In *Reighard v. Yates*—cited by Genotek in another section of its brief—the Utah Supreme Court explained that the economic loss rule's application depends on "whether a duty exists independent of any contractual obligations" between the parties, adding that once there is a contract, any tort claim "must be premised upon an independent duty that exists apart from the contract." 285 P.3d 1168, 1176-1177 (Utah 2012); *see also Salt Lake City Corp. v. ERM-West, Inc.*, 984 F. Supp. 2d 1156, 1161 (D. Utah 2013) (independent tort claims must allege "acts or omissions [that] resulted in [the] breach of an independent duty not already defined by contract"). The Utah Supreme Court refers to this as the "independent duty principle," calling it "a means of measuring the reach of the economic loss rule." *Salt Lake City Corp.*, 984 F. Supp.

2d at 1160.  Thus, the economic loss doctrine bars tort claims not only where they are based on the exact same conduct as a breach of contract claim, but also when they are not based on a duty independent of the contract.

Genotek insists that it has alleged two separate causes of action: the first, in contract, based on its allegation that AncestryDNA "secretly designed" an improved version of Genotek's product, and the second, in tort, based on AncestryDNA's filing of two patent applications related to those improvements.  But Genotek does not allege that AncestryDNA was under a duty *independent of the Agreement* to refrain from filing patent applications (it would be absurd for Genotek to do so).  The Agreement is the only conceivable basis for Genotek's tort claims. Because Genotek's tort claims arise under the Agreement, the economic loss rule applies to Genotek's conversion and trespass causes of action.  The Court should dismiss both.

### B. Genotek's Patent Portfolio is Not "Other Property," and the "Damage to Other Property" Exception Does Not Apply

Genotek's alternative argument that the "damage to other property" exception bars application of the economic loss rule should be rejected because Genotek's patent portfolio—the alleged "other property"—is squarely within the Agreement's scope.

"Other property" is defined as property that is "outside the scope" of a contract, or "unaffected by the contract bargain."  *Reighard*, 285 P.3d at 1177.  Here, Genotek cobbles together a damages theory that imagines AncestryDNA collecting royalties on the '701 and '329 patent applications—that is, on applications that have not issued as patents—thereby encouraging Genotek's customers to pay less to practice Genotek's '381 patent.  Even if the Court were to accept Genotek's speculative damages theory, Genotek's patent portfolio is not "outside the scope" of the Agreement or "unaffected" by it.  Section 10 of the Agreement ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

████████[1]   *See* Declaration of Melanie Mayer in Support of Ancestry.com DNA's Reply Brief, Ex. A at Section 10.   Genotek cannot seriously contend that its intellectual property rights, including its patent portfolio, are "outside the scope" or "unaffected by" Section 10.   The Agreement contemplates Genotek's intellectual property rights, and the economic loss rule precludes Genotek from seeking additional damages in tort.   *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 681 (Utah 2001) ("economic loss rule was developed to prevent disproportionate liability and allow parties to allocate risk by contract") (citations omitted).

### C.   Genotek's Trespass to Chattel Claim Fails Because Genotek Fails to Allege that It Possessed the Chattel or that the Chattel Was Harmed

To allege trespass to chattel, the plaintiff must show that it possessed the chattel.   *See* Restatement (Second) of Torts § 217 (1965).   Genotek's FAC identifies the chattel as AncestryDNA's '701 and '329 applications, but does not (and cannot) allege that Genotek ever possessed these patent applications.   Indeed, AncestryDNA owns these applications and vigorously contests Genotek's claim to the contrary.

Under Genotek's theory, anyone could bring a trespass claim at any time by alleging rights to another party's property and insisting the other party's use of the property—even in the absence of harm to the property—constitutes trespass.   That is not the law, and Genotek cannot

---

[1] As this Court has recognized, there is an exception to the general rule that courts may not consider matters extraneous to the pleadings in ruling on a motion to dismiss, that is, "a document integral to or explicitly relied upon in the complaint may be considered[.]   The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint."   *Gillespie*, 2015 WL 4468922 at *8, n.13 (internal quotations and ellipses omitted).   Thus while plaintiff cannot supplement the scope of its allegations in the FAC through its opposition brief, the Court may consider the Agreement at the heart of this litigation, upon which the FAC is based.

cite a single case in which a party successfully pled trespass without first establishing a possessory right to the chattel.

Moreover, under Utah law, a claim for trespass to chattel "requires that there be some damage to the chattel in question." *Walker v. Union Pacific R.R. Co.*, 844 P.2d 335, 343 n.9 (Utah Ct. App. 1992). Genotek alleges no such harm. Instead, Genotek states that AncestryDNA "deprived DNA Genotek of the right to make critical decisions in prosecuting the applications." D.I. 14 at 17; *see also* D.I. 7 at ¶¶ 77, 80-81. At best, this is an allegation of harm to *Genotek*, and not harm to the chattel. Furthermore, this "critical decisions" allegation is not found in Genotek's FAC, which only states that "Ancestry's conduct has deprived DNA Genotek of the ability to exercise its rights to the '329 Application and the '701 Application." D.I. 7 at ¶ 80. Regardless of how Genotek now phrases its argument, Genotek failed to allege any harm to AncestryDNA's patent applications, and the Court should dismiss the trespass to chattel claim.

## III.  GENOTEK FAILED TO STATE AN ACTION TO QUIET TITLE

The Court should dismiss Genotek's quiet title claim because Genotek fails to allege ownership of, or an existing interest in, AncestryDNA's patents and patent applications.

### A.  Utah Law Requires Genotek to Allege an Existing Interest or Ownership to Assert an Action to Quiet Title

Genotek does not dispute that Ontario does not recognize an action to quiet title outside of the Quieting Titles Act, which is directed to real property. Thus, its quiet title claim should be dismissed to the extent that this claim is governed by Ontario law.

Genotek argues that Utah's quiet title statute only requires that the plaintiff *could* acquire an interest in the property. D.I. 14 at 18. But that argument contradicts well-established Utah law. For example, in *Nolan v. Hoopiiaina*, the Utah Supreme Court explained that a "quiet title action is a suit brought 'to quiet an *existing* title against an adverse or hostile claim of another,' and 'the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title

as against other claimants.'" 144 P.3d 1129, 1137 (Utah 2006) (emphasis in original); *see also Powder Run at Deer Valley Owner Ass'n v. Black Diamond Lodge at Deer Valley Ass'n of Unit Owners*, 320 P.3d 1076, 1081 (Utah Ct. App. 2014) (a quiet title action is an action to "quiet an *existing* title against an adverse or hostile claim of another") (emphasis in original).  Genotek cites *Holladay Towne Ctr., L.L.C. v. Brown Family Holdings, L.L.C.*, 248 P.3d 452 (Utah 2011) in support of its argument.  But in that case, the Court found that Holladay could bring a quiet title action because it acquired "a present possessory interest in the [p]roperty" through a lease. *Id.* at 465.  In other words, Holladay had an ***existing*** interest in the property.

Recognizing that it needs an existing interest or ownership, Genotek next argues that it has alleged ownership by stating that it is the rightful owner of the patent applications under the Agreement.  D.I. 14 at 19.  But merely asserting a claim of potential ownership based on an unresolved contract dispute is not ownership or an existing interest sufficient for a quiet title action.  For example, in *Collard v. Nagel Constr., Inc.*, a buyer and seller entered into a contract for the sale of a condominium, but the buyer later discovered that title to the property remained in the seller's name.  57 P.3d 603, 605-606 (Utah Ct. App. 2002).  The buyer brought suit, seeking a declaratory judgment to quiet title based on breach of contract and adverse possession. *Id.* at 606.  The trial court granted buyer's motion to quiet title.  *Id.*  On appeal, the Court of Appeals of Utah explained that "[a]lthough the trial court characterized its decision as an order to quiet title, the trial court's decision is actually a decree for specific performance."  *Id.* at 607.  This is because "Seller, not Buyer, held title to the condominium [so] Buyer's only claim to title of the condominium was through specific performance of the contract."  *Id.*  "Unless the trial court ordered Seller to perform, Buyer had no claim to legal title of the condominium."  *Id.*  Like the buyer in *Collard*, Genotek has no legal title or interest in AncestryDNA's patent applications,

and thus cannot bring an action to quiet title under Utah law.

**B.      Genotek Fails to State an Action to Quiet Title Claim Under This Court's Inherent Equitable Power**

Genotek also asserts that it can "avail itself of [this Court's] inherent power to quiet title" by simply "alleg[ing] and ultimately prov[ing] ownership" of AncestryDNA's property.  D.I. 14 at 18.  That is, Genotek argues that this Court can choose to ignore Utah law.[2]  *Id.*  The only case Genotek cites does not support it's novel theory.  In *1st National Credit Corp. v. Von Hake*, 511 F. Supp. 634 (D. Utah 1981), the court only determined whether a federal case to quiet title should be dismissed in favor of a concurrently-filed state action addressing the same claim.  *Id.* at 345.  The *1st National* court simply recognized that a quiet title claim can be heard in a federal court; it did not hold that a federal court can ignore applicable substantive state law.  The Court should apply Utah law and dismiss Genotek's quiet title claim.

**C.      A Quiet Title Claim is Not a Proper Remedy for Genotek's Claims**

Genotek also incorrectly requests that it be allowed to pursue a quiet title claim as a remedy for its contract, conversion, and trespass to chattel claims.  As the Utah Supreme Court explained in *Collard*, a quiet title action is not a proper remedy for a breach of contract claim under Utah law.  57 P.3d at 607.  Genotek must seek specific performance of the contract instead.  *Id.*  Likewise, conversion and trespass to chattel are tort claims barred by the economic loss doctrine.  Thus, Genotek's request should be denied.

In sum, Genotek's action to quiet title should be dismissed under Rule 12(b)(6).

**IV.     CONCLUSION**

For all of the reasons above, AncestryDNA respectfully requests that the Court dismiss Genotek's willful infringement, conversion, trespass to chattel, and action to quiet title claims.

---

[2] As explained in AncestryDNA's opening brief, Utah law should apply since it has the "most significant relationship" to this dispute.  AncestryDNA is located there. (D.I. 10 at 9-10).

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael Sacksteder
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Tel:  (415) 875-2300

Melanie L. Mayer
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Tel:  (206) 389-4510

By:   /s/ Stephanie E. O'Byrne
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Stephanie E. O'Byrne (#4446)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com
      sobyrne@potteranderson.com

*Attorneys for Defendant Ancestry.com DNA, LLC*

Dated:  September 18, 2015
PUBLIC VERSION
Dated:  September 25, 2015
1204893 / 42476