IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DNA GENOTEK INC., | ) | |
| | ) | |
| Plaintiff, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| v. | ) | C.A. No. 15-355-SLR |
| | ) | |
| ANCESTRY.COM DNA, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | ██████████████████████ |
| | ) | |

## SECOND AMENDED COMPLAINT

OF COUNSEL:
David C. Doyle
Brian M. Kramer
John R. Lanham
Dean S. Atyia
MORRISON FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 314-5415

Dated: January 22, 2016

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
300 Delaware Avenue, Suite 1120
SHAW KELLER LLP
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DNA GENOTEK INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-355-SLR |
| | ) | |
| ANCESTRY.COM DNA, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | ██████████████ |
| | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff DNA Genotek Inc. ("DNA Genotek"), by its attorneys, for its Second Amended

Complaint, alleges as follows:

1.    This is an action for patent infringement arising under the patent laws of the

United States, Title 35, United States Code, involving United States Patent No. 8,221,381 B2

("the '381 patent") (attached as Exhibit A hereto), an action for breach of contract, conversion,

trespass to chattel, false designation of origin, false advertising, and an action to quiet title.

## PARTIES

2.    Plaintiff DNA Genotek is a Canadian corporation with its principal place of

business in Kanata, Ontario.  DNA Genotek is a wholly-owned subsidiary of OraSure

Technologies, Inc., a Delaware corporation with its principal place of business in Bethlehem,

Pennsylvania.

3.    Upon information and belief, Defendant Ancestry.com DNA LLC ("Ancestry") is

a Delaware limited liability company with its principal place of business in Provo, Utah.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, Section 1, et seq. of the United States Code.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  The claims for breach of contract, conversion and trespass to chattel, and the action to quiet title, arise under the laws of Ontario, Canada, and/or the common laws of Delaware or other states.  The Court has subject matter jurisdiction over these claims under the provisions of 28 U.S.C. § 1367(a).

5.     This Court has personal jurisdiction over Ancestry because Ancestry is a Delaware limited liability company, Ancestry has transacted business in this District and it has otherwise purposely availed itself of the privileges and benefits of the laws of the State of Delaware by virtue of organizing in Delaware.  Ancestry and its related companies specifically target customers with ties to Delaware through their "Delaware family history research page" on the Ancestry.com website, which touts access to Delaware census and voter lists; Delaware birth, marriage, and death certificates; Delaware naturalization records; and other Delaware records.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## FACTUAL BACKGROUND

7.     DNA Genotek is a leading provider of products for biological sample collection, including oral fluid sample collection and stabilization solutions for molecular applications. DNA Genotek has revolutionized the nucleic acid (DNA and RNA) collection market with products that provide substantial advantages over traditional methods of biological sample collection.  DNA Genotek's products incorporate proprietary technology that is protected by a robust patent estate.

8.     DNA Genotek developed and patented its proprietary saliva DNA collection kits ("DNA Genotek Saliva Collection Products").  DNA Genotek sells the DNA Genotek Saliva Collection Products to customers and distributors worldwide.

**DNA Genotek and Ancestry Entered Into Sales Agreements for
the DNA Genotek Saliva Collection Products**

9.     Before January 2012, Ancestry and DNA Genotek discussed a business relationship whereby DNA Genotek would provide the DNA Genotek Saliva Collection Products to Ancestry.

10.     In January 2012, DNA Genotek and Ancestry entered into a Mutual Non-Disclosure Agreement (the "NDA").

11.     The NDA provides that Confidential Information includes any information provided by the discloser, whether operational, financial, product or service or customer information or otherwise, whether disclosed to recipient in oral, written or electronic form, which would be considered confidential by a reasonable person under the circumstances or is labeled as confidential.

12.     The NDA further provides that the recipient of Confidential Information shall not use any of the Confidential Information for the recipient's own benefit or for the benefit of any third party, or any other purpose than that for which it was disclosed.

13.     On or around February 7, 2012, DNA Genotek proposed the first sale of 50,000 units of the DNA Genotek Saliva Collection Products to Ancestry with a sales quote and a terms and conditions document ("Terms and Conditions") attached.

14.     Ancestry responded by issuing a purchase order for the same number of units. The purchase order included the amount of product to be shipped and the purchase price.  It did not include a separate set of terms and conditions.  On or around February 15, 2012, Kenneth

Chahine, on behalf of Ancestry, signed DNA Genotek's original sales quote, acknowledging that Ancestry agreed to the price and corresponding Terms and Conditions.

15.    For approximately two years in 2012 and 2013, DNA Genotek and Ancestry entered into multiple similar sales agreements for the sale of more than 300,000 units of the DNA Genotek Saliva Collection Products to Ancestry.

16.    During these two years, Ancestry received the Terms and Conditions with the sales quotes multiple times. Ancestry repeatedly agreed to the Terms and Conditions multiple times over the two years when it accepted and signed DNA Genotek's sales quotes with the Terms and Conditions attached.

17.    For example, Ancestry's representative signed a sales quote attaching a copy of the Terms and Conditions on June 3, 2013.

18.    Ancestry's purchases of the DNA Genotek Saliva Collection Products were governed by these sales quotes and the attached Terms and Conditions.

19.    Section 7 of the Terms and Conditions, among other things, prohibits Ancestry from reverse engineering the chemical solution contained in the DNA Genotek Saliva Collection Products.

20.    Under Section 10 of the Terms and Conditions, DNA Genotek is the rightful owner of any new use, enhancement, or improvement of its products by Ancestry. To the extent that Ancestry developed a new use, improvement, or enhancement of the DNA Genotek Saliva Collection Products, whether separately patentable or not, Ancestry was required to disclose it immediately to DNA Genotek.

21.    Ancestry continued to purchase the DNA Genotek Saliva Collection Products through at least the end of 2013.

**Ancestry Secretly Designed a New Device That Amounted to an Invention or Discovery of a New Use, Improvement or Enhancement of the DNA Genotek Saliva Collection Products**

22.     Ancestry is the assignee of PCT Patent Application No. WO 2015/017701 A1, entitled "Sample Collection Device" ("the '701 Application").  A true and correct copy of the '701 Application is attached hereto as Exhibit B.  Ancestry employees, including Kenneth G. Chahine, Benjamin J. Oyler, and Catherine Ann Ball, are named inventors of the '701 Application.

23.     The '701 Application specifically mentions four DNA Genotek patent applications and one issued DNA Genotek United States Patent in the Background of the Invention section.

24.     The '701 Application claims priority to U.S. Provisional Application No. 61/861,329, filed on August 1, 2013 ("the '329 Application").

25.     At the time of filing of the '329 Application on August 1, 2013, Ancestry was buying and using the DNA Genotek Saliva Collection Products from DNA Genotek.

26.     At the time of filing of the '329 Application on August 1, 2013, the Terms and Conditions governed the purchase and use of the DNA Genotek Saliva Collection Products.

27.     The content of  the '701 Application is an admission by Ancestry  to the International Bureau of the World Intellectual Property Organization, or the PCT receiving office, i.e., the United States Patent & Trademark Office, that it has invented an improved sample collection device.

28.     To the extent that Ancestry developed an enhanced or improved version of any DNA Genotek Saliva Collection Product, DNA Genotek is the rightful owner of that invention or product pursuant to Section 10 of the Terms and Conditions.

29.     Ancestry failed to disclose timely the sample collection device later described in the '329 Application or the '701 Application to DNA Genotek.

**Ancestry Breached the Terms and Conditions At Least by Failing to Disclose That It Developed Its Own Product Based On the DNA Genotek Saliva Collection Products**

30.     Upon information and belief, Ancestry employees and/or consultants hired by Ancestry developed a sample collection device ("the Ancestry Product") that they later described in the '329 Application or the '701 Application.

31.     DNA Genotek did not consent to Ancestry withholding the development of the Ancestry Product.

32.     Upon information and belief, Ancestry reverse engineered the chemical solution contained in the DNA Genotek Saliva Collection Products to develop the Ancestry Product.

33.     Ancestry failed to disclose timely the Ancestry Product to DNA Genotek.  In January 2014, without disclosing the '329 Application, the '701 Application, or the inventorship information therein, at least one Ancestry employee explained that the Ancestry Product was an improvement of the DNA Genotek Saliva Collection Products.

34.     Upon information and belief, Ancestry has and continues to make, use, sell, and offer to sell the Ancestry Product and/or services that incorporate the use of the Ancestry Product.

**Ancestry's Filing of the '329 Patent and the '701 Patent Without an Assignment to DNA Genotek Constitutes Conversion or Trespass to Chattel**

35.     At the time of the filing of the '329 Application, Ancestry began the process of creating a property right allowing it to exclude others from practicing the invention described in the '329 Application and later the '701 Application.  At the time of the filing, Ancestry intended to keep the intellectual property right to itself and withhold it from DNA Genotek.  Ancestry

eventually required the named inventors to assign their interest in the invention to Ancestry and not to DNA Genotek.

36. By filing the '329 Application and the '701 Application and submitting an assignment to Ancestry, as opposed to an assignment to DNA Genotek, Ancestry converted a property right that otherwise should belong to DNA Genotek.

37. DNA Genotek did not consent to the filing of either the '329 Application or the '701 Application without assignment to DNA Genotek.

38. In addition to claiming ownership of intellectual property that DNA Genotek owns, Ancestry sold and continues to sell the Ancestry Product. Ancestry's sales of its device result in lost sales to DNA Genotek and separately diminish the value of DNA Genotek's patent portfolio.

**Ancestry Infringes the '381 Patent**

39. DNA Genotek is the owner by assignment of all right, title, and interest in and to United States Patent No. 8,221,381 B2 ("the '381 Patent"), entitled "Container System for Releasably Storing a Substance," which duly and legally issued to DNA Genotek, as assignee of Rod Muir, Derek Kirkland, Ian Curry, Roy Sunstrum, Paul Lem, and H. Chaim Birnboim, on July 17, 2012.

40. Ancestry has been and is now infringing on one or more claims of the '381 Patent.

41. Ancestry infringes the '381 Patent at least by making, using, offering for sale, selling, marketing, distributing, and/or importing the Ancestry Product.

42. Ancestry is infringing the '381 Patent, either literally or by the doctrine of equivalents.

43. Ancestry was aware of the '381 Patent when engaging in these knowing and purposeful activities and was aware that the making, using, selling, or offering for sale of the Ancestry Product or services incorporating the Ancestry Product constituted an act of infringement of the '381 Patent.

44. Ancestry has been aware of the '381 Patent and the applications leading to the publication of the '381 Patent since at least February 13, 2012.

45. Kenneth Chahine is the Executive Vice President and General Manager at Ancestry. Dr. Chahine is a registered patent attorney. Dr. Chahine teaches a course on intellectual property and licensing at the University of Utah's College of Law.

46. On February 13, 2012, Kenneth Chahine signed a customer approval form indicating his receipt, approval, and acknowledgment of the custom packaging of Ancestry's Saliva Collection Products provided by DNA Genotek. The signed form includes an image of the label that appeared on collection kits sold to Ancestry by DNA Genotek. The label identified that the product provided to Ancestry by DNA Genotek was covered by DNA Genotek's U.S. Patent No. 7,482,116 and other pending patents.

47. On September 20, 2012, Dr. Chahine approved an amended version of the Ancestry label for the DNA Genotek-provided Saliva Collection Products. The amended label changed the patent marking to include the words, "Patent (www.dnagenotek.com/legalnotices)." By at least October 30, 2012, DNA Genotek's legal notices web page indicated that at least DNA Genotek Saliva Collection Product Model No. OG-510 was protected by the '381 patent. The product DNA Genotek provided to Ancestry was a customized version of DNA Genotek's Model No. OG-510. The customized features of the product provided by DNA Genotek to Ancestry, e.g., the color of the cap, were not patentably distinct features compared to Model No.

OG-510. On August 1, 2013, Ancestry filed the '329 Application and referenced DNA

Genotek's patents and patent applications as prior art.

48.     Ancestry sells and distributes the Ancestry Product with the following product

label that includes the words "Made in USA." A true and correct photograph of an Ancestry

Product label appears below.



49.     ████████████████████████████████████████

████████████████ Ancestry's use of the phrase "Made in USA" on its product label

constitutes commercial speech that, on information and belief, is intended to positively influence

public perception of the Ancestry Product.

50.     Ancestry manages the supply chain of its product through an ongoing partnership

with Spectrum Packaging L.L.C., which later changed its name to Spectrum Solutions L.L.C.

(collectively "Spectrum").

51.     Spectrum provides the Ancestry Product to Ancestry.

52.     Spectrum enlists vendors to manufacture the Ancestry Product.

53.     ███████████████████████████████████████████████████
███████████████████████████████████

54.     Ancestry's claim that the Ancestry Product is "Made in USA" is literally false. The Ancestry Product comprises a cap, funnel, and collection tube.  It is packaged in a plastic tray and covered by a label.  Each component of the Ancestry Product is ███████████, not the United States of America.  ████████████████████████████████████ the Ancestry Product.  Accordingly, Ancestry was and is aware that each component of the Ancestry Product is ███████████.

55.     In addition to being literally false, Ancestry's claim that the Ancestry Product is "Made in USA" is misleading and, upon information and belief, has either deceived or has the capacity to deceive a substantial segment of potential customers.  Upon information and belief, customers are more likely to purchase additional Ancestry Products after seeing Ancestry's false designation of origin, and potential customers who learn of this false designation are more likely to purchase the Ancestry Product instead of competing products that do not advertise as "Made in USA."

56.     Upon information and belief, Ancestry contacts its existing customers and urges them to purchase additional Ancestry Products for family and friends who would also be interested in genealogical testing.

57.     ███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████.  The entities to which Ancestry/██████ have marketed the Ancestry Product include DNA Genotek's customers and potential customers.

58.     In connection with the Ancestry/Spectrum partnership, Spectrum advertises on its website that the Ancestry Product is "Made in USA."  Upon information and belief, Ancestry and Spectrum also provide potential bulk customers with product samples that include the false claim "Made in USA."

59.     DNA Genotek's competing DNA Genotek Saliva Collection Products are manufactured in Canada.  DNA Genotek does not advertise its products as "Made in USA." Ancestry's false and misleading statements have caused and threaten to cause DNA Genotek competitive or commercial injury, including but not limited to DNA Genotek's ability to compete with Ancestry and Spectrum and to the overall opinion of the DNA Genotek products held by customers and potential customers.

## COUNT I – INFRINGEMENT OF THE '381 PATENT

60.     DNA Genotek restates and incorporates by reference paragraphs 1-59, as if fully set forth herein.

61.     Ancestry has been and is now infringing one or more claims of the '381 patent, either literally or by the doctrine of equivalents.

62.     Ancestry's infringing activities include making, using, offering for sale, selling, marketing, distributing, and/or importing products that infringe one or more claims of the '381 Patent.

63.     Ancestry infringes the '381 Patent at least by making, using, offering for sale, selling, marketing, distributing, and/or importing the Ancestry Product or services incorporating the Ancestry Product.

64.     Ancestry's infringing activities violate 35 U.S.C. § 271.

65.     As a result of Ancestry's infringement of the '381 Patent, DNA Genotek has been and will be damaged, and DNA Genotek is entitled to be compensated for such damages

pursuant to 35 U.S.C. § 284 in an amount to be determined at trial, but in no event less than a reasonable royalty.

66.     Upon information and belief, Ancestry's infringement of the '381 Patent has been and continues to be willful and deliberate.

67.     DNA Genotek has complied with any statutory requirement for placing a notice of its patents on its products, including but not limited to its Oragene●DNA®, Oragene●DISCOVER®, and Oragene●Dx® branded saliva collection kits.

68.     Upon information and belief, Ancestry's infringement of the '381 Patent will continue unless enjoined by this Court.  As a result of Ancestry's infringement, DNA Genotek has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, DNA Genotek is entitled to injunctive relief against such infringement.

69.     As a result of Ancestry's infringement, DNA Genotek has suffered and will continue to suffer significant damages.

## COUNT II – BREACH OF CONTRACT

70.     DNA Genotek restates and incorporates by reference paragraphs 1-69, as if fully set forth herein.

71.     The Terms and Conditions constitute a valid and binding contract between DNA Genotek and Ancestry.

72.     Ancestry's purchases of the DNA Genotek Saliva Collection Products were governed by the Terms and Conditions between at least February 15, 2012 and October 2013.

73.     DNA Genotek fully complied with all of its obligations under the Terms and Conditions at all times.

74.     Ancestry breached the Terms and Conditions at least by failing to disclose timely the Ancestry Product to DNA Genotek.

75.     Upon information and belief, Ancestry breached Section 7 of the Terms and Conditions by reverse engineering the chemical solution contained in the DNA Genotek Saliva Collection Products to develop the Ancestry Product.

76.     Ancestry's breaches of the Terms and Conditions were material.

77.     Upon information and belief, Ancestry's breaches of the Terms and Conditions were done willfully and deliberately.

78.     As a direct and proximate result of Ancestry's breaches, DNA Genotek has suffered and will continue to suffer significant damages, including damages resulting from the continued making, using, selling, and offering to sell the Ancestry Product without permission from or payment to DNA Genotek.

## COUNT III - CONVERSION

79.     DNA Genotek restates and incorporates by reference paragraphs 1-78, as if fully set forth herein.

80.     DNA Genotek has the right to possess the intellectual property rights described in the '329 Application and the '701 Application pursuant to Section 10 of the Terms and Conditions.

81.     By filing the '329 Application and the '701 Application with the intent to assign ownership to Ancestry, Ancestry has willfully and substantially interfered with intellectual property rights belonging to DNA Genotek.

82.     Ancestry had no lawful justification for interfering with the intellectual property rights afforded to DNA Genotek in the Terms and Conditions.

83.     DNA Genotek did not consent to Ancestry's conduct.

84.     Ancestry's conduct has deprived DNA Genotek of the ability to exercise its rights to the '329 Application and the '701 Application, to any invention or enhanced or improved

version of any DNA Genotek Saliva Collection Products or to any other products covered by the '329 Application or the '701 Application.

85.     As a direct and proximate result of Ancestry's conduct, DNA Genotek has suffered and will continue to suffer significant damages, including damages stemming from Ancestry's sales of the Ancestry Product and the diminished value of DNA Genotek's patent portfolio.

## COUNT IV- TRESPASS TO CHATTEL

86.     DNA Genotek restates and incorporates by reference paragraphs 1-85, as if fully set forth herein.

87.     As an alternative to Count III, Ancestry separately pleads this claim for trespass to chattel.

88.     DNA Genotek has the right to possess the intellectual property rights in the '329 Application and the '701 Application pursuant to Section 10 of the Terms and Conditions.

89.     By filing the '329 Application and the '701 Application with the intent to assign ownership to Ancestry, Ancestry has willfully and substantially interfered with intellectual property rights belonging to DNA Genotek.

90.     Ancestry had no lawful justification for interfering with the intellectual property rights afforded to DNA Genotek in the Terms and Conditions.

91.     DNA Genotek did not consent to Ancestry's conduct.

92.     Ancestry's conduct has deprived DNA Genotek of the ability to exercise its rights to the '329 Application and the '701 Application, to any invention or enhanced or improved version of any DNA Genotek Saliva Collection Products or to any other products covered by the '329 Application or the '701 Application.

93.     As a direct and proximate result of Ancestry's conduct, DNA Genotek has suffered and will continue to suffer significant damages, including damages stemming from Ancestry's sales of the Ancestry Product and the diminished value of DNA Genotek's patent portfolio.

## COUNT V- ACTION TO QUIET TITLE

94.     DNA Genotek restates and incorporates by reference paragraphs 1-93, as if fully set forth herein.

95.     DNA Genotek has the right to possess the intellectual property rights in the '329 Application and the '701 Application pursuant to Section 10 of the Terms and Conditions.

96.     Ancestry has made an adverse claim to DNA Genotek's rights in the '329 Application and the '701 Application by filing the '329 Application and the '701 Application in its own name, failing to disclose the '329 Application or the '701 Application to DNA Genotek, failing to disclose the Ancestry Product and any other Ancestry products covered by the '329 Application or the '701 Application to DNA Genotek, and failing to assign the rights to the '329 Application and the '701 Application to DNA Genotek.

97.     DNA Genotek seeks to quiet title to its property rights in the '329 Application and the '701 Application.

## COUNT VI- FALSE DESIGNATION OF ORIGIN
## (Lanham Act, 15 U.S.C. § 1125, *et. seq.*)

98.     DNA Genotek restates and incorporates by reference paragraphs 1-97, as if fully set forth herein.

99.     The Ancestry Product is sold nationwide in interstate commerce.

100.     Ancestry designates the geographic origin of the Ancestry Product as the United States by claiming that the Ancestry Product is "Made in USA."  Ancestry's designation of the Ancestry Product as "Made in USA" was knowing and willful.

101.     Ancestry's designation of the United States as the geographic origin of the Ancestry Product is literally false because the Ancestry Product is actually ██████████ ████████ .

102.     Ancestry's false designation of origin is likely to confuse and deceive consumers as to the actual origin of the Ancestry Product.

103.     Ancestry's false designation is material because it concerns aspects of the Ancestry's Product that are essential to customers' purchasing decisions.

104.     As a result of Ancestry's false designation of origin, DNA Genotek has been harmed and believes it is likely to be harmed further.

105.     The harm caused to DNA Genotek by Ancestry's false designation of origin cannot be compensated by money damages alone.

106.     Ancestry's false designation of origin entitles DNA Genotek to treble damages, disgorgement of Ancestry's profits, injunctive relief, marketplace damages, and attorneys' fees.

**COUNT VII – FALSE ADVERTISING**

**(Lanham Act, 15 U.S.C. § 1125, *et. seq.*)**

107.     DNA Genotek restates and incorporates by reference paragraphs 1-106, as if fully set forth herein.

108.     The Ancestry Product is sold nationwide in interstate commerce.

109.     Ancestry advertises, promotes, and labels the Ancestry Product as "Made in USA."  Ancestry's labeling of the Ancestry Product as "Made in USA" was knowing and willful.

110. Ancestry's claim that the Ancestry Product is "Made in USA" is literally false because the Ancestry Product is actually ██████████████████.

111. Ancestry's claim that the Ancestry Product is "Made in USA" is also misleading and, upon information and belief, has either deceived or has the capacity to deceive a substantial segment of potential customers.

112. As a result of Ancestry's false advertising, DNA Genotek has been harmed and believes it is likely to be harmed further.

113. The harm caused to DNA Genotek by Ancestry's false advertising cannot be compensated by money damages alone.

114. Ancestry's false advertising entitles DNA Genotek to treble damages, disgorgement of Ancestry's profits, injunctive relief, marketplace damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, DNA Genotek respectfully requests the following relief:

(a)     Entry of judgment that Ancestry has infringed the '381 patent;

(b)     Preliminary and permanent injunctive relief enjoining Ancestry, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with it, from directly or indirectly infringing the '381 patent;

(c)     An award of damages adequate to compensate DNA Genotek for Ancestry's infringement of the '381 patent;

(d)     An award of increased damages, under 35 U.S.C. § 284, in an amount three times the actual damages awarded to DNA Genotek, by reason of Ancestry's willful infringement of the '381 patent;

(e)     A declaration that this case is exceptional under 35 U.S.C. § 285,

15 U.S.C. § 1117, and/or other applicable authority;

(f)     A judgment that Ancestry has breached its obligations under the Terms and Conditions;

(g)     Preliminary and permanent injunctive relief enjoining Ancestry from making, using, selling, or offering to sell, directly or as part of a service, sample collection devices that are described in the '329 Application or the '701 Application, derived from the DNA Genotek Saliva Collection Products, or designed, in whole or in part, after reverse engineering the chemical solution contained in the DNA Genotek Saliva Collection Products;

(h)     Preliminary and permanent injunctive relief enjoining Ancestry from taking any action or engaging in any inaction that would affect the status quo of the '329 Application or the '701 Application and any related applications, related patents, or foreign counterparts, including with respect to ownership;

(i)     A judgment that DNA Genotek is the rightful owner of the '329 Application and the '701 Application and any related applications, related patents, or foreign counterparts;

(j)     An award of damages adequate to compensate DNA Genotek and/or restitution for Defendant's breach of contract;

(k)     An award of damages adequate to compensate DNA Genotek and/or restitution for Defendant's acts of conversion;

(l)     An award of damages adequate to compensate DNA Genotek and/or restitution for Defendant's acts of trespass to chattel;

(m)     An award of DNA Genotek's costs and attorneys' fees incurred in connection with this action, under 35 U.S.C. § 285, 15 U.S.C. § 1117, and other applicable authority;

(n)     Preliminary and permanent injunctive relief enjoining Ancestry, its officers,

agents, servants, employees, attorneys, and all other persons in active concert or participation

with them, from falsely labeling and advertising products as made in the United States, or

otherwise designating the origin of the Ancestry Product as the United States;

(o)     An award of damages adequate to compensate DNA Genotek for Ancestry's

Lanham Act violations;

(p)     An award of Ancestry's profits;

(q)     A trebling of damages pursuant to 15 U.S.C. § 1117(a);

(r)     An award of pre-judgment interest; and

(s)     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

DNA Genotek hereby demands trial by jury on all issues so triable.


                                                  */s/ Karen E. Keller*
                                                  John W. Shaw (No. 3362)
                                                  Karen E. Keller (No. 4489)
                                                  300 Delaware Avenue, Suite 1120
OF COUNSEL:                                       SHAW KELLER LLP
David C. Doyle                                    Wilmington, DE 19801
Brian M. Kramer                                   (302) 298-0700
MORRISON FOERSTER LLP                             jshaw@shawkeller.com
12531 High Bluff Drive                            kkeller@shawkeller.com
Suite 100                                         *Attorneys for Plaintiff*
San Diego, CA 92130
(858) 314-5415

Dated:  January 22, 2016

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on January 22, 2016, this document was served on

the persons listed below in the manner indicated:

**BY E-MAIL**

David E. Moore
Stephanie E. O'Byrne
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
sobyrne@potteranderson.com

Michael J. Sacksteder
FENWICK & WEST LLP
555 Califorinia Street
San Francisco, CA 94104
(415) 875-2300
msacksteder@fenwick.com

Melanie L. Mayer
FENWICK & WEST LLP
1191 Second Avenue
Seattle, WA 98101
(206) 389-4510
mmayer@fenwick.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
300 Delaware Avenue, Suite 1120
SHAW KELLER LLP
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*