IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DNA GENOTEK INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-355-SLR |
| | ) |
| ANCESTRY.COM DNA, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 22nd day of March, 2016, having reviewed the renewed motion to dismiss filed by defendant Ancestry.com DNA, LLC ("Ancestry") and the papers filed in connection therewith;[1]

IT IS ORDERED that said motion (D.I. 27) is granted in part and denied in part, for the reasons that follow:

1. **Introduction.** Ancestry has moved to dismiss various claims contained in the second amended complaint ("SAC") filed by plaintiff DNA Genotek Inc. ("DNA Genotek"). More specifically, Ancestry moves to dismiss the willful infringement, conversion, trespass to chattel, and action to quiet title claims. Each of the grounds for dismissal will be addressed *seriatim*. The court has jurisdiction to resolve said motion pursuant to 28 U.S.C. §§ 1338 and 1367(a).

2. **Standard of review.** Ancestry's Rule 12(b)(6) motion tests the sufficiency of

---

[1]The parties rely for the most part on the briefing submitted in connection with Ancestry's motion to dismiss the first amended complaint. (D.I. 27)

the facts alleged by DNA Genotek in the SAC. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The Third Circuit requires a two-part analysis when reviewing a Rule 12 (b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010). First, the court must accept DNA Genotek's asserted facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The asserted facts may include the public record, the SAC, exhibits attached to the SAC (as well as exhibits attached to the complaint and first amended complaint), and documents incorporated into the SAC by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Second, the court must determine whether those facts sufficiently show that DNA Genotek has a "plausible claim for relief." *Fowler*, 578 F.3d at 211.

3. **Willful infringement.** Ancestry argues that the willful infringement claim should be dismissed because DNA Genotek has failed to sufficiently allege the requisite mental state. To prove a claim of willful infringement, a plaintiff must show (1) "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). At the pleading stage, a plaintiff alleging a cause of action for willful infringement "must adequately allege 'factual circumstances in which the patents-in-suit [were] called to the attention' of [the accused infringer]." *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012).

4. The facts alleged in the SAC indicate that Ancestry was aware of the patent

2

in suit[2] before the instant lawsuit commenced (May 4, 2015, D.I. 1) in one of two ways. First, Ancestry had a business relationship with DNA Genotek through its purchase of saliva collection products from DNA Genotek from 2012 to 2013. Starting in February 2012, Dr. Kenneth G. Chahine[3] approved various versions of the Ancestry label for the DNA Genotek-provided saliva collection products. Dr. Chahine approved an amended label in September 2012, which label included the following patent marking language: "Patent (www.dnagenotek.com/legalnotices)." By at least October 30, 2012, DNA Genotek's legal notices web page indicated that a model saliva collection product similar to Ancestry's customized product was protected by the '381 patent. (D.I. 25, ¶¶ 45-47) Second, on July 31, 2014, Ancestry filed its own patent application, the '701 Application, covering a saliva collection product. Dr. Chahine is the first named inventor on the '701 Application. The '701 Application claims priority to U.S. Provisional Application No. 61/861,329 ("the '329 Application") filed on August 1, 2013; Ancestry was still buying and using DNA Genotek's saliva collection product in August 2013. On November 14, 2014, the International Search Report ("IRS") issued in connection with the '701 Application; it referenced as one of four relevant documents US 2009-0216213 A1 ("the '213 Application"), filed on August 27, 2009 and listing DNA Genotek as the assignee. Consistent with the fact that '213 Application ultimately issued as the '381

---

[2]U.S. Patent No. 8,221,381 ("the '381 patent").

[3]Dr. Chahine was the Executive Vice President and General Manager at Ancestry. According to the SAC, "Dr. Chahine is a registered patent attorney." (D.I. 25, ¶ 45) Dr. Chahine is also a named inventor on Ancestry's patent application, PCT Patent Application No. WO 2015/017701 A1, entitled "Sample Collection Device" ("the '701 Application"), attached as exhibit B to DNA Genotek's first amended complaint.

patent, the latter is also cited in the IRS. (D.I. 25, ¶¶ 22-25, 47; D.I. 7, exs. A and B)

5. The court agrees with Ancestry that any of the above facts taken alone would not provide sufficient indicia that the '381 patent was called to the attention of Ancestry. However, the factual circumstances surrounding the parties' dispute, taken as a whole, satisfy the requirement that the '381 patent was called to Ancestry's attention. More specifically, the parties were in an ongoing business relationship whereby Ancestry was made aware that the saliva collection kits purchased from DNA Genotek were marked as patent-protected. Dr. Chahine, a patent attorney and general manager at Ancestry, not only was responsible for approving the labels Ancestry attached to the DNA Genotek products, but was also the first-named inventor on Ancestry's '701 Application. At the very latest, by November of 2014, Ancestry was directly informed that the '213 Application was relevant prior art and that the '381 patent was a family member. The cases cited by Ancestry are not persuasive as their factual underpinnings are inapposite.

6. **Conversion and trespass to chattel claims.** Ancestry argues in its motion that the above claims are barred under the economic loss doctrine, because they are based on "'the exact same conduct'" as DNA Genotek's breach of contract claim. *See Advanced Recovery Sys. LLC v. Am. Agencies LLC,* 2013 WL 5969837, at *5 (D. Utah Nov. 7, 2013) (citation omitted). DNA Genotek agrees with the legal principle, but argues that the conduct alleged in the SAC to support its breach of contract claim is not exactly the same as the conduct alleged to support either the conversion or trespass to chattel claims. Moreover, according to DNA Genotek, the economic loss doctrine does not apply because Ancestry's conversion results in "'damage to other property'

4

compared to the breach of contract claims." (D.I. 14 at 16, citing *Reighard v. Yates*, 285 P.3d 1168, 1177 (Utah 2012)).

7. As I read the cases cited by the parties, in the absence of independent tort duties, application of the economic loss doctrine is appropriate. *See Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 14 (Utah 2003) (cited in *Advanced Recovery Systems*, 2013 WL 5969837, at *5). *See also Reighard*, 285 P.3d at 1177 ("When a duty exists that does not overlap with those contemplated in a contract, 'the economic loss rule does not bar a tort claim "because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule."'") (citation omitted). In DNA Genotek's SAC, the breach of duty is described in terms of the contract between the parties.[4] Although DNA Genotek asserts that the conduct attributed to the different claims is not exactly the same (*see* D.I. 14 at 15-16), clearly the alleged tort and contract duties are at least overlapping. In other words, without a breach of "Section 10 of the Terms and Conditions," there would be no basis for the asserted tort claims.

8. DNA Genotek argues that, even if the duties are overlapping, the economic loss doctrine does not apply to the facts of this case because it has claimed "damage to **other** property," another exception to the doctrine. *Reighard*, 285 P.3d at 1177.

> "Other property" is property that is outside the scope of a contract and unaffected by the contract bargain. When property is contemplated in the scope and subject matter of a contract, the parties to the contract can only recover for damage to that property through contract remedies. However, when property falls outside of the scope of a contract, the economic loss rule will not apply and relief may be available in tort. Under this framework, the extent to which the economic loss rule applies in any given case depends on the contract at issue and the scope of the duties and property the contract

---

[4]That is, "Section 10 of the Terms and Conditions." (D.I. 25, ¶¶ 80, 88, and 95)

5

covers.

*Id.* According to DNA Genotek, "Ancestry's conversion and trespass to chattel damaged DNA Genotek's patent portfolio because the filing of the [Ancestry] applications dilutes the royalties that DNA Genotek can collect and diminishes the value of DNA Genotek's portfolio." (D.I. 14 at 16) The SAC, however, does not include such allegations. Although DNA Genotek generally alleges that it will suffer "the diminished value of [its] patent portfolio," it characterizes its "patent portfolio" as rightfully containing Ancestry patent applications wrongfully withheld from DNA Genotek in violation of Section 10 of the Terms and Conditions. (D.I. 25 at ¶¶ 81 and 85, 89 and 93, and 96) Under these circumstances, I conclude that the DNA Genotek has not adequately pled its conversion and trespass to chattel claims to withstand the economic loss doctrine; the motion to dismiss is granted in these regards.

9. **Quiet title.** According to Utah law, "[s]tanding to bring a quiet title action to perfect title is limited to parties who could acquire an interest in the property created by the court's judgment or decree." *Holladay Towne Center, LLC v. Brown Family Holdings, LLC*, 248 P.3d 452, 464 (Utah 2011) (citation omitted). "[T]he role of the quiet title statute . . . is simply 'to determine rights, interests, or claims' of the parties." *Id.* "Federal courts may . . . hear and determine actions to quiet title within their equitable jurisdiction, provided that the applicable jurisdictional prerequisites are met." *1st National Credit Corp. v. Von Hake*, 511 F. Supp. 634, 637 (D. Utah 1981).

10. Based on the above standard, DNA Genotek has appropriately pled its quiet title claim. (D.I. 25, ¶¶ 94-97) I note in this regard that the cases cited by Ancestry are

6

inopposite or misinterpreted, particularly the language cited from *Western States Contracting v. Spilsbury*, 2014 WL 4232675 (D. Utah Aug. 26, 2014), a construction lien case which involved a "multitude of parties." *Id.*, at *1. The court in that case correctly found that, because "a lien does not confer title," a lien holder had no standing to bring a quiet title action. In its general discussion of quiet title actions, however, the court acknowledged that, "[t]o succeed in an action to quiet title, 'all a party need do is prove prima facie that he has title[.]" *Id.* at *10 (*citing Gillmor v. Blue Ledge Corp.*, 217 P.3d 723, 728 (Utah Ct. App. 2009)). Ancestry recites the follow-up language: "In addition, '[a] true quiet title action is a suit brought to quiet an **existing** title against an adverse or hostile claim of another, and the effect of a decree quieting title is not to **vest** title, but rather is to **perfect** an existing title as to other claimants.'" *Id.* (emphasis in original) (*citing In re Hoopiiaina Trust*, 144 P.3d 1129, 1137 (Utah 2006)). The Utah Supreme Court in *In re Hoopiiaina Trust*, however, was analyzing whether a "true" quiet title action was subject to a statute of limitations. The Court concluded that,

> [w]hen a party asserts a [true] quiet title claim in which that party merely requests that the court adjudicate the validity of an opponent's adverse or hostile claim to property to which the party already holds title, no statute of limitations applies. . . . If the party's claim for quiet title relief can be granted only if the party succeeds on another claim, then the statute of limitations applicable to the other claim will also apply to the quiet title claim.

144 P.3d at 1137. In other words, the language employed by Ancestry to support its motion to dismiss is misplaced and not persuasive.

10. **Conclusion.** For the reasons stated, Ancestry's motion to dismiss is granted in part and denied in part.

                                                          _____
                                                             United States District Judge